# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **CAUSE NO. MO:24-CR-025** |
| | § | |
| | § | |
| **JONATHAN CHASE RUSSELL** | § | |

## DEFENDANT'S UNOPPOSED MOTION TO CONTINUE TRIAL AND DEADLINES

The Defendant Jonathan Chase Russell, by counsel, moves to continue the trial and associated deadlines set for May 6, 2024, to July 1, 2024. Granting this continuance allows the parties to disclose relevant discovery and litigate outstanding pre-trial suppression motions. It also allows the defense necessary time to hire and consult experts and make any reciprocal discovery disclosures necessary before trial. Finally, the parties anticipate a grand jury in the Western District of Oklahoma will indict Mr. Russell for charges related to this case. A continuance allows the parties to negotiate a package offer to the benefit of both parties and affected persons in this case.

## FACTUAL & PROCEDURAL  BACKGROUND

### A.  Factual Background[1]

On February 12, 2024, Special Agent (SA) Livingstone filed a criminal complaint alleging Mr. Russell distributed child pornography. *Complaint*, CM/ECF Doc. No. 1 at 1. In the affidavit supporting the complaint, SA Livingstone alleged an FBI employee ("Online Covert Employee" or "OCE") worked in an undercover capacity on TeleGuard. *Id.* at 2. TeleGuard is a Swiss-based end-to-end encryption[2] app where people communicate through group and individual text

---

[1] The facts here are to provide a framework for the Court to understand factual background in the motion to continue. Their inclusion should not be viewed as admissions to the truthfulness of their contents.

[2] End-to-end encryption  is a form of communication that ensures only the sender and recipient of the message can read a message. *United States v. Cristerna-Gonzalez*, 962 F.3d 1253, 1256 (10th Cir. 2020).

messages. *Id.* The Online Covert Employee observed the user "toddylover" share images of child pornography of two children under the age of 12 to the group. *Id.* at 3. The OCE started a direct message[3] conversation with toddylover. *Id.* During the conversation, toddylover sent child pornography to the OCE and claimed the children were his nieces. *Id.* He also told the Online Covert Employee, his nieces stay overnight with him two and three nights per week. *Id.* Toddylover also said he had ejaculated on his nieces. *Id.*

At some point, an international law enforcement official gave the Online Cover Employee TeleGuard's Android push token[4] for toddylover. From there, the FBI made a variety of exigent search requests to Google, internet service providers, and cell phone companies. *Id.* at 3-4. From those returns and subsequent investigation, the FBI determined the push token was associated with Mr. Russell. *Id.* at 4-5. The FBI located Mr. Russell in Odessa, Texas and brought him to the FBI Midland Office for an interview. *Id.* at 5. During the interview, Mr. Russell admitted to distributing child pornography. *Id.* Mr. Russell also gave law enforcement the passcode to his phone. *Id.* During a manual search of the phone, law enforcement discovered photographs that matched the child pornography toddylover gave to the OCE. *Id.*

### B. Procedural Background

The FBI arrested Mr. Russell on February 9, 2024, for Distributing Child Pornography. On February 13. 2024, the Court held an initial appearance where Mr. Russell was not represented by counsel. Counsel entered his appearance on February 14, 2024. Two weeks later on February 28, 2024, a grand jury indicted Mr. Russell on one count of possession of child pornography (Count 1), one count of distribution of child pornography (Count 2) and one count of travelling state lines

---

[3] A direct message conversation is a conversation between two end users.
[4] A push token is an item that allows for an application's servers (in this case TeleGuard) to send a push notification to a mobile device (in this case toddylover's mobile device). PushToken, Apple.com, https://shorturl.at/gkxMZ (last accessed Mar. 25, 2024). A push notification is pop-up message from an application to the mobile device.

with the intent to engage in illicit sexual conduct (Count 3). On Thursday March 14, 2024, the United States provided an initial batch of discovery.

On March 20, 2024, counsel met with SA William Livingstone to review purported images of child pornography. During this meeting, SA Livingstone disclosed to counsel that the FBI possessed more of Mr. Russell's TeleGuard messages beyond those mentioned in the complaint. Some of those messages, according to SA Livingstone, supported Count 3 of the indictment. He also suggested that the FBI had or would obtain historical cell site location information to show Mr. Russell's movements as it pertained to Count 3 of the indictment. The government has not disclosed these messages or the historical cell site information to the defense.

During this case, the defense has attempted to find a digital forensic expert who will service a case in Midland, but so far could not find one that both works child pornography cases and will work in Midland. The government's case requires a digital forensic expert to see if the government's claims about when certain images were created and how those images got on the device.

Finally, during the course pretrial litigation, the parties have explored whether this case can resolve through a plea agreement. However, the government has disclosed that the Western District of Oklahoma plans to indict Mr. Russell on conduct that is likely related to this investigation in early April.[5] Counsel has spoken to the First Assistant Federal Defender for the Western District of Oklahoma about the ability to resolve Mr. Russell's federal cases in Oklahoma and Texas at the same time. The First Assistant Federal Defender did not anticipate resolving Mr. Russell's Oklahoma case in time for the current plea deadline.

**ARGUMENT**

---

[5] Although the United States has not confirmed what the charges will be, the discovery suggests it will contain a production of child pornography charge.

Mr. Russell moves this Court to continue the trial and associated deadlines from May 6, 2024, to July 1, 2024. Granting a continuance allows the government time to comply with its discovery obligations and allows the defense to hire experts and litigate pretrial motions. It also allows the parties more time to negotiate a package offer on the Oklahoma and Texas federal cases. Allowing the parties to negotiate a package offer grants the parties and any affected persons more certainty in the outcome litigation. And it avoids a jury having to sit through a difficult trial.

As a default, the Speedy Trial Act requires a case to go to trial 70 days of the indictment being filed or a defendant's arraignment, whichever is later. 18 U.S.C. § 3161(c)(1). Several circumstances toll time under the Speedy Trial Act, and the Court may continue the case set for trial. *See generally* 18 U.S.C. § 3161(h), 3161(h)(7). For the Court to continue the timelines in case, it must find that the "ends of justice" outweigh the best interests of the defendant and the public in a speedy trial. 18 U.S.C. § 3161(h)(7). The Court should consider, among other things, whether not granting a continuance would "deny [the parties] the reasonable time necessary for effective preparation;" "make it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself;" or whether not granting a continuance would result in a miscarriage of justice.

### A. A CONTINUANCE ALLOWS THE GOVERNMENT TO COMPLY WITH OUTSTANDING DISCOVERY ISSUES AND ALLOWS THE DEFENSE TO LTIIGATE MULTPLE PRE-TRIAL ISSUES.

#### 1. *The Government Has Not Disclosed All of Mr. Russell's Statements Needed to Prepare for Trial*

The Court should continue the hearing to allow the government more time to disclose all statements made by Mr. Russell. According to SA Livingstone, the FBI possesses messages sent on TeleGuard that it attributes to Mr. Russel. Some of these statements, according to SA

Livingstone, refer evidence that would support Count Three of the indictment. The defense does not have access to these statements, and it does not know when it can inspect them.

Even the defense had access to the statements, there is a separate issue as to whether the defense can make copies of those statements. It is counsel's belief that these statements are comingled with material that could be child pornography. Because Mr. Russell may testify, he must be able to see the statements that the government could attribute to him. Seeing those statements verbatim is important for Mr. Russell to decide whether to testify and to prepare to testify.  Although there are prohibitions on the reproduction of child pornography in discovery, 18 U.S.C. § 3508(m), those prohibitions are only limited to the images themselves.

Counsel would prefer to selectively screen capture (Windows Key+Shift+S) Mr. Russell's statements to avoid photo the disclosure of any purported child pornography. If there are many TeleGuard statements, this process could take some time. If defense counsel cannot selectively screen capture Mr. Russell's statements, it would take time to transcribe all of Mr. Russell's statements in the FBI Midland Office so Mr. Russell could review them.

Additionally, Mr. Russell needs further clarification whether the government will rely on historical cell site information to build its case. If it will, Mr. Russell will need to hire another expert to review the historical cell site location information. Obtaining this expert will cause a further delay in the case.

2. *Some Outstanding Discovery Is Necessary to Litigate a Fourth Amendment Suppression Motion*

Mr. Russell has outstanding discovery requests concerning how a foreign government obtained the push token and the government's relationship with that foreign government. This information is necessary for the defense to file motions to suppress the push token and all derivative evidence. The Fifth Circuit has found that the Fourth Amendment applies to searches

by a foreign government under foreign law when the foreign government acts as an agent of the United States or in a joint venture with the United States. *United States v. Heller*, 625 F.2d 594, 599-600 (5th Cir. 1980); *see also United States v. Rojas*, 812 F.3d 382, 397-98 (5th Cir. 2016) (refusing to consider whether joint venture doctrine applied because defendants lacked a significant voluntary connection to the United States triggering Fourth Amendment protection). Obtaining discovery on the government's relationship with the foreign government and how the push token was acquired is critical to this suppression motion.

The discovery suggests that the government possesses documents relating to the suppression motion. In the opening FBI 302 for this case, an FBI SA wrote "please refer to the opening EC for the documentation of the initial online covert employee activity that preceded the below described activity." The next part of the 302 begins with the Online Covert Employee receiving the push token from an unknown international law enforcement officer. Mr. Russell believes that the "opening EC" and other documents may disclose how the government obtained the information and the relationship between the United States and how this law enforcement agency acquired the push token. The United States has not informed Mr. Russell whether or when it will provide this discovery. Obtaining this discovery is necessary before filing the suppression motion.

3.  *A Continuance Is Needed to Obtain Discovery and Litigate a Suppression Motion Concerning Mr. Russell's Statements to Police.*

Besides the motion to suppress the push token, the defense needs additional time to obtain discovery for and to move to suppress Mr. Russell's statement. Mr. Russell anticipates moving to suppress his statement because he invoked his right to remain silent. Within this *Miranda* issue, there are legal questions the defense must research in anticipation of government's counterarguments.

In addition to the *Miranda* issues, the defense needs outstanding discovery to explore whether Fifth Amendment coercion claim could exist. During his interrogation, the police showed Mr. Russell various materials which are not visually present on the camera, and he makes statements in response to those images or documents. For instance, in one exchange, the government showed Mr. Russell a document, which prompted Mr. Russell to claim the police knew his wife had nothing to do with this offense. This led to an exchange where the government threatened to charge his wife with child pornography offenses if he did not talk to the police. Mr. Russell needs a copy of whatever the police the police showed him to see if a Fifth Amendment claim exists. Some of these documents may contain child pornography. If so, the need to set up an appointment to view those materials will cause a delay in filing the motion to suppress.

Finally, there is a novel issue about whether the government unlawfully compelled Mr. Russell to disclose his passcode to his phone. During the investigation, SA Livingstone obtained a search warrant to obtain Mr. Russell's cell phone. The search warrant authorized the police to require a suspect to unlock a cell phone through biometric identification (facial recognition or fingerprint) during the execution of the search of the premises. But the warrant did not authorize law enforcement to compel a suspect to tell law enforcement his passcode or to direct Mr. Russell to manually enter a passcode to phone. Nevertheless, during the interrogation, SA Livingstone and SA Sams imply they have a warrant requiring to Mr. Russell to disclose the passcode. They further suggest that his refusing to provide the passcode would be disobeying the order. Therefore, a potential suppression issue exists concerning whether that conduct unlawfully and coercively compelled Mr. Russell to disclose his passcode. *See*, Orin Kerr, *Is Compelled Decryption Heading to the Supreme Court?*, VOLOKH CONSPIRACY (Dec. 14, 2023), https://reason.com/volokh/2023/12/14/is-compelled-    decryption-heading-to-the-supreme-court/

(explaining the split in authority in compelled disclosure encryption cases). Counsel needs time to investigate this split in authority and research how the government's use of the search warrant applies to this developing area of law.

### B. The Defense Needs More Time to Hire an Expert, and to Comply with Reciprocal Discovery Obligations.

Mr. Russell needs a continuance to finish hiring a digital forensics expert to examine the returns on the searches of Mr. Russell's digital devices. Counsel has been diligently attempting to hire digital forensics expert. However, counsel has found difficulty finding an expert that will both service the Midland area and will work child pornography cases. Counsel is negotiating a contract with a potential expert. However, even if that expert were hired immediately, they would need to obtain access to the digital files, consult with counsel and make any required reciprocal discovery disclosures. Because the government has not disclosed all digital evidence to Mr. Russell,  this will cause  a further delay in working with the expert.

### C. A Continuance Allows the Parties to Negotiate a Package Plea Offer

The Court should continue the case to allow the parties to negotiate a package offer on Mr. Russell's federal cases. The government has told counsel it is open to resolving this case through a plea agreement. Mr. Russell has relayed an offer. However, the uncertain outcome of his Oklahoma federal case makes a satisfactory offer difficult. If the parties reached a package offer, Mr. Russell's offer could provide more certainty to all affected persons.

Counsel has spoken to the First Assistant Federal Public Defender for the Western District of Oklahoma about the impending Oklahoma federal case. In this conversation, counsel asked whether their office (if appointed) could resolve their case before this Court's plea deadline. The First Assistant Federal Public Defender replied that he did not think it was possible to do so.

Having more time for the Oklahoma case to process through its system allows the parties to negotiate a package offer.

Here, the ends of justice warrant a continuance. Trials involving child pornography can traumatize several participants (complaining witnesses, defendants, jurors, members of the public). Allowing the parties time to craft a plea agreement that satisfies both parties satisfies the ends of justice more than a speedy trial.

## CONCLUSION

The Court should continue the trial and associated deadlines with this case to July 1, 2024.

Respectfully submitted.

MAUREEN SCOTT FRANCO
Federal Public Defender

/s/ EPHRAIM FOLBERG
Assistant Federal Public Defender
Western District of Texas
1020 Andrews Highway, Ste E
Midland, Texas 79701
(432) 247-6888
(432) 684-3814 (FAX)
Bar Number: Texas 24119719

*Attorney for Defendant*

**CERTIFICATE OF CONFERENCE**

On Wednesday March 27, 2024, I sent an e-mail to the attorney of record for the United States concerning their position regarding this motion. The attorney of record for the United States replied that it is **unopposed** to the motion.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of April, 2024, I electronically filed the foregoing Defendant's Unopposed Motion to Continue Trial and Deadlines with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Heather Haywood
Assistant U.S. Attorney

/s/ EPHRAIM FOLBERG
*Attorney for Defendant*

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **CAUSE NO. MO:24-CR-025** |
| | § | |
| | § | |
| **JONATHAN CHASE RUSSELL** | § | |

## O R D E R

On this date came on to be considered the Defendant's Unopposed Motion to Continue Trial and Deadlines, and the Court having considered the premises, is of the opinion that the same should be and is hereby **GRANTED**.

It is therefore **ORDERED** that all corresponding deadlines be continued in the above-styled and numbered cause.

**SO ORDERED** on this the _____day of_____, 20_____.

_____
THE HONORABLE DAVID COUNTS
UNITED STATES DISTRICT JUDGE